May it please the Court. It may, if you give us your name. I'm Tom Hartzell. I'm here for Perry McCullough, who would like to be here himself, but Somebody's evidently doing big remodels, so. But Mr. McCullough is being held in custody in violation of a law of the United States. This is a simple case, and it deals with the interpretation When did the program end? The program ended with the end of fiscal year 2010, but I don't think That would have been in September 30 of 2010? Yes, Your Honor. Okay. Did your client, was he admitted to the program by that date? My client was never admitted to the program, Your Honor. And so if the program ended on September 30 of 2010, and he was never admitted, who had the discretion to let him in? The program Does the Court have the discretion to let him in? No, the Court can't let him into a program that no longer exists, but the Court can afford him a remedy. A remedy for what? A remedy for being held I mean, Congress is now saying, we're going to go through a program, and you've got this much time to get in it, and after that it's over. And who did they say had the discretion to let him in? The Bureau of Prisons, right? That's right. So where do I get the idea that I have the chance to do anything about undoing the discretion of the Bureau of Prisons? What law, what concept, what authority gives me that opportunity? The Constitution of the United States. Constitution. Yes, Your Honor. And the Bill of Rights allows you to decide that the district court erred in its interpretation while it's upholding the Bureau of Prisons' interpretation of a phrase within a statute. If you can find that, if the district court can – if this Court finds that the district court erred in the calculation of the time that Mr. McCulloch was in prison and the reason he was denied admission for the program was – Oh, we don't know the reason, do we? He applied for the program. He was told that he had not completed 75 percent of his sentence, and he wouldn't complete 75 percent of his sentence until next month. And they did not deal with any of the other criteria that – That just makes him eligible for the program. Isn't there other levels of review to see if he's appropriate to enter into the program, even if he's qualified? Well, there's a number of criteria that were included within the statute and within the pilot program. The first and foremost was to have completed the greater of 10 years of the sentence or 70 – 10 years' imprisonment or 75 percent of the sentence imposed. And you have to be not convicted of a sex crime, not convicted of a crime of violence. The other – the other criteria, I don't believe that the government contends that Mr. McCulloch would qualify or would meet the other criteria. Now, it is a discretionary program. The statute itself says the Bureau of Prisons, you know, has the authority to release some or all of – may release some or all of the eligible prisoners. No, it doesn't even say should. No, it says may, and then it doesn't even say everybody that qualifies. It says some. It's not just some or all. But here's – here's the rub. I mean, yes, this is – this is an appeal that one scratches one's head until one looks at the way that the phrase term of imprisonment was calculated and the obvious error in that calculation, despite Chevron deference to an agency interpretation of a phrase within a statute, denied him even a chance to be part of this elderly program. Why have I any authority except to say BOP reconsider? You can say BOP reconsider. You can say – But I haven't got any program to put them in, so that's not a very good alternative. I don't know what remedy there is. The best I can do on a discretionary decision is say that was an abuse of discretion. Go give your discretion again. You know, there is a remedy. That's the best I can do. I don't find any – I don't have – find any authority for me to be able to do anything else under the statutes. What the program would do, Your Honor, is release an eligible – I'm not – I'm not concerned about what it would do. My question is where do I have the authority to do anything better than, even if I swallowed what you're telling me, BOP reconsider, which they can't because there is no program. The goal was to get McCulloch into a halfway house, a halfway – The goal is not the question. Again, answer my question. I hate to hammer you about that again, but the question is not what the goal is. It's all good. I was the chief judge of a drug court. I know the goal. I know what the deal is. But I only had so much authority to administer the drug court. Now I'm here again. I'm on appeal. This district court said, don't know what I can do. The program's over. I can only order reconsideration and there's nothing to be done because they can't put him in there if they did reconsider. They can, but not under the auspices of a program that no longer exists. They can lower his custody status and allow him to finish his sentence in a community confinement center, which is part of the Bureau of Prisons, which is a Bureau of Prisons facility, and he would still be serving a bureau. Does it pose a problem for you when you say to us they can rather than they are compelled to? I believe they're compelled to recalculate the sentence. On what theory? I beg your pardon? On what theory? That they're compelled to recalculate the sentence? No, no, no. Admit him to a program, lower his time, let him live in a halfway house, whatever it is you're asking us to let him do. What compels them to do that? What would compel them to do that would be what comes next after they recalculate a sentence and find that they denied him this opportunity by their own error and their misinterpretation of a United States statute. They denied him his opportunity for what? To spend. No, no. To be considered. Right. Spending. Because it was their discretion. They just they, at least this record suggests, that they left him out of the mix. Right. If they had put him in the mix, what on this record says he would have been one of the winners? Nothing. But they left him. Does it pose a problem for you? It poses a problem, but they left him out of the mix for an impermissible reason, for a misinterpretation of a statute. And it's for a misinterpretation of a phrase within the statute. And they need to be told that, hey, you left this guy out of the mix. We can't compel you to put him in a program that no longer exists. But you abused your discretion in deciding. We couldn't even compel you to put him in a program that did exist because it was discretionary. True. But what you could compel the Bureau of Prisons to do is follow the law and interpret the statute in the proper manner when you're calculating the term of imprisonment as used in the statute that gave them the authority to release him. That's what this Court can compel the Bureau of Prisons to do. And this Court can remand the case to the district court with instructions to tell the Bureau of Prisons to recalculate the sentence. And then I believe Mr. McCulloch, who's proved himself a wonderfully litigious inmate, can go ahead and at that point file another suit for release into a halfway house, not under this program which no longer exists, but under a denial of a due process right by a misinterpretation of the statute. And, yes, this Court had really, you know, hit the hit this particular nail in the head. The program no longer exists. It was a discretionary program. But the Bureau of Prisons cannot deny someone admission to a discretionary program for an impermissible reason, and that's what they did this time. Let's go right to your merits argument. If I look at what you're suggesting, you're suggesting that I'm going to read language in a statute to suggest good time credit, right? Because the statute doesn't say anything about good time credit. Correct. So what does the statute say? What's the exact language I'm looking at? Well, the Title 42 statute that authorized the pilot program says so. Oh, no, no. What does the statute say about what it is that I'm really looking at? Well, the statute says it's 10 years or 75 percent of the term of imprisonment to which the offender was sentenced. Correct. That doesn't have anything about good time credit? No. But you look at different courts. Now, just a minute. Yes, sir. What language in the statute, what language anyplace in there says that good time credit is allowed? No language in the statute says that. Nothing. I've got to determine that all on my good idea. No. Is that what you're saying? I'm saying that. What's the best case you've got that says good time credit is implied in to which the offender was sentenced? What? What's the best case you've got? Barbara v. Thomas, the Supreme Court case that says term of imprisonment means the actual time that an inmate's going to spend in custody. That's your best? I'd say so. Okay. Because what do I do with Izzo out of the Tenth Circuit? Say what? Tenth Circuit doesn't necessarily apply here. And I think or believe Izzo was dealing with it. I understand that no more than Posner did. But I'm just trying to say there's no question prison already served would apply because I've got some pretty good case law on that. But good time credit, I haven't got anything saying that. And I believe Izzo was also dealing with a sentence imposed later when 3624 was after it was amended to say the time vests at the end of the sentence. All right. I'm appreciative of what you had to say. Thank you. Thank you. May I please, Court? My name is Bruce Ferg, Assistant United States Attorney on behalf of the government in this case. The Court obviously sees the problem. As Mr. Hartzell has conceded, there is no program that this Court could send him to even if it felt like it wanted to. And therefore, the case is simply moot. That's what the Sierra Foundation order says and which the other courts across the country have been looking at similar issues have said. If there's no program, it's over. And you don't even have to get to the mirrors. As far as this idea that somehow some recomputation could be directed so that he might be eligible for some other program, actually Sierra Foundation also kind of addressed that. In that particular case, a pilot program had been done away with by congressional order, and they said, well, you know, maybe some similar program will become available down the line, but that's a different case. You're going to have to look at the specific criteria under that hypothetical program. And as it happens, yes, there is this general authority that the Bureau of Prisons has to release people to halfway houses, but it has individualized criteria which need to be met. And that issue really isn't even appropriately before this Court because Mr. McCullough never requested admittance into that program. It was never presented to the district court. It was never raised or even suggested until his original reply brief. And so it's not even appropriately before this Court. Finally, on the merits, Izzo was just the first, but I think it's highly persuasive. It even addresses what Mr. Hartsell calls his best case, Barber v. Thomas, and says, that's distinguishable. That's a whole different kettle of fish. And subsequently, we've had opinions from the Fourth and the Eleventh Circuit that I put into my brief all agreeing. In fact, it's unanimous. Every circuit court and every district court that I've been able to find has agreed this case, this program is over, it's moot, it's totally Bureau of Prisons' discretion, and in any event, he didn't even meet the rest of the criteria or suggest that he did, that he would have had to have met to become eligible, let alone appropriate, as the Kim court called it. The fact that all other circuits do it is probably your worst argument in this circuit. Except that this Court is reluctant to create a circuit split, and it seems particularly inappropriate, about a moot statute, a really pointless exercise in creating division. Well, if there is another residential reentry program, as counsel suggests, that he would qualify for, doesn't that avoid the mootness problem? No, because it's a totally different program which he never requests to be put in on this record. He hasn't exhausted his remedies. We don't even know, I don't, I know that the criteria have been reconfigured since this Court threw out the original set in the Rodriguez case. But I understand that there are new criteria which have been implemented in like 2011. So different kettle of fish, different program. If he thinks he's eligible, he can apply, and maybe he'll be found eligible. But that's not a reason to look at this case, which was appropriately denied and is now moot anyway, and to try and find some kind of authority which this Court, this panel has indicated, you can't find it, I can't find it, Mr. Hartzell can't find it, to give him the relief that he wants. Thank you. I think we've heard your argument, Counselor. I don't think there's much else to say. I mean, we question you about the same things, so I think we will submit this case, unless you have something else you really want to say. No, thank you. All right. Then Case 11-16920, McCulloch v. Graber, is hereby submitted.
judges: Burgess, Farris, Smith